Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel XI

| EL PUEBLO DE PUERTO RICO<br>Recurrido<br><br>v.<br><br>VÍCTOR M. MORALES ROLDÁN<br>Peticionario | KLCE202201401 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Fajardo<br><br>Caso Núm.<br>NSCR202100401<br>NSCR202100402<br><br>Sobre:<br>Art. 3.1 Ley 54 (1989) (2 casos) |
|---|---|---|

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero

Adames Soto, Juez Ponente

## **SENTENCIA**

En San Juan, Puerto Rico, a 28 de febrero de 2023.

Comparece el señor Víctor M. Morales Roldán, (peticionario), mediante recurso de *certiorari*, solicitándonos la revocación de una Resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo, (TPI), el 7 de noviembre de 2022. Mediante dicho dictamen el foro primario denegó una solicitud del peticionario para ordenar a la Policía de Puerto Rico la devolución de su licencia de arma, y arma ocupada, luego de que concluyera el proceso criminal seguido en su contra, sin haberse logrado una convicción.

Nos plantea el peticionario que, una vez resultó exonerado de los cargos criminales que pesaban en su contra, el Artículo 2.08 de la Ley de Armas, según enmendado, 25 LPRA sec. 462(g), impone como deber ministerial sobre el foro primario, que ordene la devolución del arma incautada, privándole de discreción judicial para hacer alguna otra determinación sobre el asunto.

NÚMERO IDENTIFICADOR

SEN2023_____

## I. Resumen del tracto procesal

El proceso criminal seguido en contra del peticionario inició con la presentación por el Ministerio Público de sendos cargos contra el primero, por presunta infracción al Artículo 3.1 de la Ley Núm. 54 de 1989, según enmendada, Ley para la Prevención e Intervención con la Violencia Doméstica, 8 LPRA sec. 631, (Ley 54, en adelante).

Superadas las etapas previas al juicio, este quedó pautado para ser celebrado el 18 de enero de 2022. A pesar de ello, llegada la fecha prevista para el inicio del juicio, el tribunal *a quo* tuvo que desestimar las acusaciones que pesaban contra el peticionario, por haberse violentado los términos dispuestos en la Regla 64(n)(4) de Procedimiento Criminal, 34 LPRA Ap. II, R. 64(n)(4).[1]

Como resultado, el 18 de mayo de 2022, el peticionario instó ante el foro primario una *Moción solicitando a la Policía de Puerto Rico devolución de huellas y documentos*.

En respuesta, el 29 de junio de 2022, el TPI emitió *Resolución y Orden* accediendo a la solicitud del peticionario, al tenor de lo cual, ordenó al Comisionado del Negociado de la Policía de Puerto Rico que eliminara del sistema computarizado y le devolviera al primero las huellas dactilares, los documentos y las fotografías por concepto de las acusaciones aludidas.

Posteriormente, el 24 de octubre de 2022, el peticionario acudió nuevamente ente el tribunal *a quo*, esta vez solicitando que ordenara a la Policía de Puerto Rico devolverle la licencia de arma, y el arma que le fue incautada, como producto del proceso criminal iniciado en su contra, ya desestimado.

Sin embargo, el 7 de noviembre de 2022, el foro recurrido declaró No Ha Lugar esta última solicitud del peticionario, afirmando que "Esa

---

[1] R. 64(n)(4) "Que el acusado no fue sometido a juicio dentro de los ciento veinte (120) días siguientes a la presentación de la acusación o denuncia."

determinación (la de la devolución del arma) la tomará la Policía de Puerto Rico dentro de su facultad administrativa de la Ley de Armas".

Inconforme, el peticionario instó *Moción de Reconsideración* ante el mismo foro primario, que fue denegada.

Es así que, el peticionario acude ante nosotros, mediante recurso de *certiorari*, solicitando la revocación de la Resolución de 7 de noviembre de 2022 aludida, señalando los siguientes errores:

> 1) Erró el Honorable Tribunal de Primera Instancia, Sala de Fajardo, al declarar No Ha Lugar la solicitud de devolución de licencia de armas y del arma, en contravención al Art. 2.08 de la Ley de Armas de Puerto Rico.
> 2) Erró el Honorable Tribunal de Primera Instancia, Sala de Fajardo, al declarar No ha Lugar la solicitud y devolución de licencia de armas y del arma, disponiendo que esa determinación le corresponde a la Policía de Puerto Rico dentro de su facultad administrativa.

Visto lo cual, el 13 de enero de 2023, emitimos Resolución concediéndole un término de treinta (30) días al Procurador General de Puerto Rico para que compareciera a exponer su posición sobre el asunto. Sin embargo, superado el término concedido, este no compareció. En consecuencia, damos el caso por perfeccionado y procedemos a resolverlo.

## II. Exposición de Derecho

a.

El auto de *certiorari* permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163, 174 (2020); *Municipio Autónomo de Caguas v. JRO Construction*, 201 DPR 703, 710 (2019); *Medina Nazario v. McNeil Healthcare LLC.*, 194 DPR 723, 728 (2016). Es, en esencia, un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *García v. Padró*, 165 DPR 324, 334 (2005). La expedición del auto descansa en la sana discreción del tribunal y encuentra su característica distintiva, precisamente, en la

discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Municipio Autónomo de Caguas v. JRO Construction,* supra*,* en la pág. 711*; IG Builders et al. v. BBVAPR,* 185 DPR 307, 338 (2012). Además, **es el trámite adecuado para atender asuntos postsentencia.** *IG Builders et al v. BBVAPR,* 185 DPR 307, 339 (2012) (Énfasis nuestro).

En los casos atendidos bajo el proceso criminal, la expedición de un auto de *certiorari* debe evaluarse a la luz de los criterios enumerados por la Regla 40 de nuestro Reglamento, según la cual:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.
>
> 4 L.P.R.A. Ap. XXII-B, R. 40.

En síntesis, la citada Regla exige que, como foro apelativo, evaluemos si alguna de las circunstancias enumeradas está presente en la petición de *certiorari.* De observarse alguna de estas, entonces podríamos ejercer nuestra discreción e intervenir con el dictamen recurrido.

A pesar de que reconozcamos una de las situaciones previstas en la Regla 40, *supra,* —que nos habilitaría para expedir el *certiorari*—, tal ejercicio sigue siendo uno discrecional. Según lo explicó nuestro Tribunal

Supremo, la amplitud del recurso moderno de *certiorari* no significa que sea equivalente a una apelación, pues sigue siendo discrecional y los tribunales debemos utilizarlo con cautela y por razones de peso. *Pueblo v. Díaz De León,* 176 DPR 913,918 (2009). A lo que cabe añadir, que el ejercicio adecuado de la discreción judicial está indefectiblemente atado al concepto de la razonabilidad. *Pueblo v. Ortega Santiago,* 125 DPR 203, 211 (2001). Es decir, la discreción judicial es *forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera.* *Íd.*

b.

La Ley Núm. 168 de 11 de diciembre de 2019, conocida como la Ley de Armas de Puerto Rico de 2022 (Ley de Armas), según enmendada, 25 LPRA sec. 461 *et seq.*, regula lo concerniente a la posesión y portación de armas de fuego en Puerto Rico, entre otros asuntos.

En lo pertinente, el Artículo 2.08 de la Ley de Armas, *supra*, dispone lo siguiente:

> Luego de una determinación de causa probable para el arresto de cualquier persona que posea una licencia de armas, por la comisión de uno o más delitos graves o sus tentativas, el tribunal, ordenará la suspensión provisional e incautación de la licencia hasta una determinación final y firme en el proceso criminal. El tribunal ordenará la ocupación inmediata de todas las armas de fuego y/o municiones de la persona con licencia de armas, las cuales se consignarán para su custodia en el Depósito de Armas y Municiones del Negociado de la Policía o en una armería. **De resultar el acusado con una determinación de no culpabilidad, final y firme, <u>el juez vendrá obligado ministerialmente por esta Ley a ordenar la inmediata devolución de la licencia de armas y de todas las armas de fuego y municiones.</u>** Toda arma de fuego y munición devuelta, deberá entregarse en la misma condición en que se ocuparon. (Énfasis y subrayado provistos).

Previo a la porción legislativa citada, el Artículo 2.07 de la Ley de Armas de Puerto Rico *derogado* disponía, sobre el asunto bajo nuestra atención, lo siguiente:

> Luego de una determinación de causa probable para el arresto de cualquier persona a la cual se le haya otorgado una licencia de armas, por la comisión de cualquiera de los

delitos especificados en el Artículo 2.11 o de violaciones a las disposiciones de esta Ley, el tribunal suspenderá provisionalmente la licencia hasta la determinación final del procedimiento criminal. Disponiéndose además que el tribunal ordenará la ocupación inmediata de la totalidad de las armas y municiones del concesionario para su custodia en el Depósito de Armas y Municiones de la Policía. **De resultar el acusado con una determinación de no culpabilidad, final y firme, <u>el juez ordenará la inmediata devolución de su licencia de armas y de las armas y municiones</u>.** Toda arma y municiones así devueltas deberán entregarse en las mismas condiciones en que se ocuparon. (Énfasis y subrayado provistos).

Se ha de indicar que los textos citados exhiben una clara progresión dirigida a prevenir el ejercicio de la discreción del juez al momento de disponer sobre las armas de una persona que ha resultado no culpable, mediante dictamen final y firme. La claridad en la letra de la ley bajo discusión impone como interpretación concluir que, el Artículo 2.08 de la Ley de Armas citado, exige al juez la incuestionable obligación ministerial de la devolución de las armas, allí donde medie una determinación de no culpabilidad final, *ergo*, sin conceder espacio alguno discrecional para ordenar de modo distinto o escoger vías alternas.

Por último, cabe destacar que el legislador no hizo distinción alguna sobre la aplicación del Artículo 2.08 de la Ley de Armas vigente, *supra*, por causa del delito por el cual la persona hubiese sido encausada, pero encontrado no culpable. Es decir, en el contexto del artículo citado, cumplida la condición sobre no culpabilidad mediante sentencia final y firme, el legislador mandó a la devolución inmediata de las armas, sin que el juez pueda sopesar factores tales como la gravedad del delito imputado o circunstancias de peligrosidad atribuibles al tipo del delito.

## III. Aplicación del Derecho a los hechos

La exposición de derecho previa revela, sin dificultad, el curso decisorio a ser tomado por esta curia intermedia. En el caso ante nuestra consideración no hay controversia sobre los siguientes hechos: que al peticionario le fue incautada un arma y su licencia por causa del proceso

criminal iniciado en su contra, al presuntamente infringir la Ley 54; que por virtud de la Sentencia emitida por el foro primario el 18 de enero de 2022, fueron desestimados los cargos que pesaban en su contra; que la solicitud del peticionario para que le fuera devuelta su arma y la licencia aconteció el 24 de octubre de 2022, en un momento procesal en que la Sentencia aludida ya había advenido final y firme; que, no obstante lo anterior, el foro primario se negó a ordenar la devolución inmediata de la licencia y del arma requerida y, refirió tal decisión a la Policía de Puerto Rico.

Al así obrar el foro recurrido incidió, pues invirtió el mandato que surge de la Ley de Armas, en términos de que es el juez quien está obligado a ordenar a la Policía de Puerto Rico la entrega del arma de manera inmediata y, no es a esta última a quien le corresponde deliberar sobre su devolución a través de un proceso administrativo.

El Artículo 2.08 de la Ley de Armas, *supra*, no concede espacio para otra interpretación que no sea la del juez que ordene la devolución inmediata del arma, cuando medie una determinación de no culpabilidad, final y firme, en la causa penal que dio origen a la incautación. La Orden del TPI referente a que la devolución del arma solicitada *la tomará la Policía de Puerto Rico dentro de su facultad administrativa de la Ley de Armas[2]*, va en frontal contraposición con el claro mandato de la Ley de Armas, por dos razones: 1) porque, como ya discutido, el Artículo 2.08 de dicha Ley ordena que el juez declare su devolución inmediata, una vez comprobado el carácter final y firme del dictamen sobre no culpabilidad; 2) porque la Ley de Armas, a la que aludió el foro recurrido, no contiene provisión alguna que permita la conclusión de que cabría delegar en la Policía de Puerto Rico una

---

[2] Apéndice 4to del recurso de *certiorari*, página 7.

determinación que el Legislador impuso exclusivamente sobre la figura del juez, de darse la referida condición sobre no culpabilidad.[3]

En definitiva, comprobado el dictamen de no culpabilidad final y firme con relación a los cargos que pesaban contra el peticionario, tocaba al foro recurrido ordenar la devolución inmediata del arma y la licencia de manera inmediata.

## IV. Parte dispositiva

Por los fundamentos que anteceden, expedimos el auto de *certiorari* y revocamos la Resolución recurrida. En atención a lo cual, se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Fajardo, para que, mediante resolución, ordene a la Policía de Puerto Rico la devolución inmediata del arma del peticionario y la respectiva licencia.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria. La Juez Lebrón Nieves emite Voto Disidente.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[3] Claro, nuestro razonamiento solo atiende los hechos particulares de este caso, según nos corresponde. Lo que **no** supone interpretar que sirva para atender otras posibles controversias, como, por ejemplo, el curso decisorio a seguir por el TPI frente a una petición de devolución de armas, cuando todavía estén pendientes otros asuntos sin dilucidar, referentes a la continua tenencia de un arma, sea ante un foro judicial o administrativo.

| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br>V.<br><br>VÍCTOR M. MORALES ROLDÁN<br><br>Peticionario | KLCE202201401 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Fajardo<br><br>Civil Núm.: NSCR202100401 NSCR202100402<br><br>Sobre: Art. 3.1 Ley 54 (1989) (2 casos) |
|---|---|---|

## VOTO DISIDENTE JUEZ LEBRÓN NIEVES

En San Juan, Puerto Rico, a 28 de febrero de 2023.

Le corresponde a este foro revisor resolver en esta ocasión si, la primera instancia judicial incidió al denegarle al señor Víctor M. Morales Roldán (en adelante el peticionario o señor Morales Roldán), su solicitud para que se le ordenara a la Policía de Puerto Rico, la devolución de su licencia de arma, y arma ocupada, luego de que concluyera el proceso criminal seguido en su contra, sin haberse logrado una convicción.

La Mayoría de este Panel concluye que, en efecto, incidió el foro primario. Ello, por entender que, tal como plantea el peticionario, el Artículo 2.08 de la Ley de Armas, según enmendada, 25 LPRA sec. 462(g), impone como deber ministerial sobre el foro primario, que ordene la devolución del arma incautada, privándole de discreción judicial para hacer alguna otra determinación sobre el asunto.

Por las razones que en adelante se esbozan, la Juez que suscribe disiente del curso de acción tomado por la Mayoría del Panel, y consigna su desacuerdo con la postura asumida por el

Pueblo de Puerto Rico en este caso, al allanarse a la solicitud del peticionario.

Repasemos brevemente los hechos que dan origen al caso que nos ocupa. Conforme surge del expediente ante nuestra consideración y con el beneficio de haber examinado los autos originales del caso[4], el 27 de julio de 2021, el Ministerio Público presentó dos denuncias contra el peticionario por infringir el Art. 3.1 de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, conocida como la *Ley para la Prevención e Intervención con la Violencia Doméstica.* En particular, se le imputó que allá en o para el 25 de julio de 2021 y en Vieques, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Fajardo, ilegal, voluntaria y criminalmente, empleó fuerza física contra la señora Elizabeth Suárez Pizarro, quien es su pareja consensual y no han procreado hijos, para causarle daño físico a su persona consistente en que agredió a la perjudicada con bofetada en el lado derecho. Luego la agarró por el cuello, le dio con la mano en la boca cayendo al suelo ambos donde la agredió con los puños en diferentes partes del cuerpo. Hecho contrario a la ley.

El 27 de julio de 2021 en vista celebrada mediante videoconferencia (ZOOM), el foro *a quo* encontró causa probable para arresto por el delito imputado. Asimismo, como parte de los trámites de rigor, el 15 de septiembre de 2021, celebrada la vista preliminar, el foro primario encontró causa probable para acusar por dos cargos por violación al Art. 3.1 Grave de la Ley 54, *supra.* La lectura de la acusación tuvo lugar el 12 de octubre de 2021 y el Juicio en su Fondo quedó pautado para el 2 de noviembre de 2021.

---

[4] Los mismos fueron tramitados en calidad de préstamos a través de la Secretaría de este Tribunal.

Acaecidas varias incidencias procesales, entre ellas, las respectivas mociones relacionadas a la Regla 95 y 95 (A) de Procedimiento Criminal, el 2 de noviembre de 2021, se reseñaló el Juicio para el 23 de noviembre de 2021 y se extendió la vigencia de la *Orden de Protección* hasta esa misma fecha. Llegada la fecha del Juicio, el Ministerio Público no estuvo preparado por no tener disponible la prueba de cargo, por lo que se reseñaló el Juicio para el 18 de enero de 2022, último día de término y la *Orden de Protección* quedó extendida nuevamente.

Así las cosas, al Juicio pautado para el 18 de enero de 2022 el Ministerio Público no estuvo preparado, toda vez que, tampoco estuvo presente la prueba de cargo.  Por tal razón, la Defensa del acusado solicitó la desestimación de los cargos, al palio de la Regla 64 (n)(4) de Procedimiento Criminal[5].  Celebrada la Vista sobre el particular, el foro primario acogió la solicitud de la Defensa y ordenó la desestimación al amparo de la Regla 64 (n)(4) de Procedimiento Criminal, *supra*, y dictó Sentencia de conformidad.

El 18 de mayo de 2022, el acusado incoó *Moción Solicitando a la Policía de Puerto Rico Devolución de Huellas y Documentos*. En atención a dicha solicitud, el 19 de mayo de 2022, el foro primario le concedió 10 días al Ministerio Público para que acreditara si los casos fueron resometidos.  Ante el incumplimiento del Ministerio Público con la aludida *Orden*, el 8 de julio de 2022, el Tribunal le concedió al Ministerio Público, el término final de 5 días para que cumpliera con lo ordenado, a los fines de acreditarle si los casos habían sido resometidos.  Transcurrido el término provisto, sin que el Ministerio Público se expresara, el 29 de junio de 2022, el foro primario emitió *Resolución y Orden*, en la cual le ordenó al

---

[5] 34 LPRA Ap. II, R. 64 (n) (4).  Dicho precepto reglamentario establece como fundamento para la desestimación de la acusación o denuncia o cualquier cargo cuando a no ser que se demuestre justa causa para la demora o a menos que la demora para someter el caso a juicio se deba a la solicitud del acusado o a su consentimiento, el acusado no fue sometido a juicio dentro de los ciento veinte (120) días siguientes a la presentación de la acusación o la denuncia.

Negociado de la Policía o a cualquier agencia del Estado Libre Asociado de Puerto Rico que eliminara del sistema computarizado y le devolviera a la parte peticionaria, las huellas dactilares, los documentos y las fotografías tomadas al peticionario por concepto de estos casos, durante la etapa investigativa que dio base a la iniciación de este proceso criminal.

El 2 de noviembre de 2022, mediante *Moción en Solicitud de Orden* el peticionario recabó del foro de instancia que le ordenara al Negociado de la Policía de Puerto Rico, la devolución de la licencia de armas 37365 y un arma que tiene registrada a su nombre en el Negociado y que le fueron ocupadas como parte de la intervención de la Policía al comienzo de los casos por Ley 54, *supra*, que dieron origen al presente recurso.

El 7 de noviembre de 2022, el foro *a quo* emitió la *Orden* recurrida en la que declaró No Ha Lugar a la solicitud del peticionario. Señaló que: "Esa determinación la tomará la Policía de Puerto Rico dentro de su facultad Administrativa de la Ley de Armas." En desacuerdo con tal dictamen, el peticionario solicitó reconsideración, la cual igualmente, fue declarada No Ha Lugar. Aún en desacuerdo, acude ante este foro el peticionario y solicitó la revocación de la aludida determinación.

Sostiene la Mayoría de este Panel, que: "La claridad en la letra de la ley bajo discusión impone como interpretación concluir que, el Artículo 2.08 de la Ley de Armas citado, exige al juez la incuestionable obligación ministerial de la devolución de las armas, allí donde medie una determinación de no culpabilidad final, *ergo*, sin conceder espacio alguno discrecional para ordenar de modo distinto o escoger vías alternas." Señala, además, que "...el legislador no hizo distinción alguna sobre la aplicación del Artículo 2.08 de la Ley de Armas vigente, *supra*, por causa del delito por el cual la persona hubiese sido encausada, pero

encontrado no culpable. Es decir, en el contexto del artículo citado, cumplida la condición sobre no culpabilidad mediante sentencia final y firme, el legislador mandó a la devolución inmediata de las armas, sin que el juez pueda sopesar factores tales como la gravedad del delito imputado o circunstancias de peligrosidad atribuibles al tipo del delito."

Empero, es la opinión de esta Juez, que la aplicación mecánica del Artículo 2.08 de la Ley de Armas, *supra*, efectuada por la Mayoría, conlleva inevitablemente, un desvarío de la justicia. Me explico.

La *Ley de Armas de Puerto Rico de 2020*[6], regula lo concerniente a la posesión y portación de armas de fuego en Puerto Rico, entre otros asuntos. En particular, el Artículo 2.13 de la precitada ley, establece las facultades de los agentes del orden público para ocupar armas de fuego sin orden judicial, el proceso a seguir al momento de ocupar un arma de fuego por un agente del orden público y la facultad investigativa a nivel administrativo que tiene el Negociado de la Policía de Puerto Rico al ocupar un arma.

Por su parte, el Artículo 2.13 de la Ley Núm. 168-2019, *supra*, dispone, específicamente, lo siguiente:

> Cualquier agente del orden público ocupará la licencia, arma de fuego y/o municiones, que posea un ciudadano, de forma temporera, **cuando tuviese motivos fundados para entender que la persona con licencia de armas hizo o hará uso ilegal de las armas de fuego y municiones para causar daño a otras personas**; por haber proferido amenazas de cometer un delito; por haber expresado su intención de suicidarse; cuando haya demostrado reiteradamente negligencia o descuido en el manejo del arma de fuego; cuando se estime que la persona con licencia de armas padece de una condición mental, se le considere ebrio habitual o sea adicto a sustancias controladas; **o en cualquier otra situación de grave riesgo o peligro que justifique esta ocupación**. (…).
>
> **Un agente del orden público estará facultado a ocupar el arma de fuego, licencia y municiones, de forma temporera, cuando se arreste al tenedor de**

---

[6] Ley Núm. 168-2019, según enmendada, 25 LPRA sec. 461 *et seq.*

> **la misma por la comisión de un delito grave o delito menos grave que implique violencia.**
>
> El agente del orden público tendrá que consignar inmediatamente las armas de fuego y/o municiones ocupadas en un depósito de armas del Negociado de la Policía y notificar al Departamento de Justicia. Si el Tribunal no encuentra causa por los delitos por los cuales fue arrestado la persona con licencia de armas, ordenará la devolución inmediata de lo ocupado. Toda arma de fuego y municiones que sean devueltas deberán entregarse en las mismas condiciones en que se ocuparon. Bajo ningún concepto se harán marcas, modificaciones o mutilaciones al arma de fuego ocupada por los agentes del orden público o por el Estado mientras esté bajo su custodia. Esto no impedirá que el Negociado de la Policía de Puerto Rico pueda iniciar una investigación administrativa.

25 LPRA sec. 462*l.* (Énfasis nuestro).

En cuanto a las demás determinaciones que se realicen al amparo de la Ley Núm. 168-2019, *supra,* el Artículo 7.06 establece que:

> Salvo que otra cosa se disponga expresamente, todas las determinaciones que tengan que realizarse en virtud de este capítulo se regirán por las disposiciones de vistas informales, adjudicaciones y reconsideraciones establecidas en las secs. 9601 et seq. del Título 3, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico".

25 LPRA sec. 467e.

El Artículo 7.09 de la misma ley, 25 LPRA sec. 467h, le impone al Comisionado de la Policía el deber de establecer mediante reglamento todo lo relacionado al recibo, custodia y disposición de armas de fuego que sean ocupadas por la Policía, depositadas voluntariamente, entregadas por la muerte de la persona con licencia de armas o por la cancelación de una licencia.

En consonancia con el precepto legal antes reseñado, el Capítulo 15 del Reglamento Núm. 9172 de 17 de marzo de 2020, *Reglamento para la Administración de la Ley de Armas*, expresa en el inciso A (25) que:

> Salvo que otra cosa se disponga expresamente, todas las determinaciones que tengan que realizarse en virtud de la Ley 168-2019[,] supra[,] se regirán por las disposiciones de vistas informales, adjudicaciones y

reconsideraciones establecidas en la Ley 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico".

Cabe destacar que, tanto la licencia de armas como el arma del peticionario fueron ocupadas como parte de la intervención de la Policía al comienzo de los casos antes reseñados, en medio de un incidente de violencia doméstica, en el cual la perjudicada sufrió agresión física de parte del peticionario. Por consiguiente, tanto la ocupación del arma de fuego como de la licencia en cuestión, se efectuó acorde con el segundo párrafo del Artículo 2.13 de la Ley Núm. 168-2019, *supra*, la cual faculta a un agente del orden público a ocupar un arma de fuego y licencia, de forma temporera, cuando se arreste al tenedor de la misma por la comisión de un delito grave o menos grave que implique violencia.

Conforme dispone el Artículo 7.06 de la Ley Núm. 168-2019, salvo que otra cosa se disponga expresamente, todas las determinaciones relacionadas con dicha ley se regirán por los procedimientos establecidos en la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU). Cónsono con ello, la Ley Núm. 168-2019, *supra*, faculta al Negociado a realizar investigaciones administrativas para conceder o denegar licencias de armas y para incautar armas de fuego. La persona afectada por la decisión del Negociado tiene disponible un procedimiento de revisión, el cual se rige por las disposiciones de la LPAU.[7]

Al ejercer nuestro deber ministerial de impartir justicia en este caso, no podemos abstraernos del serio problema de violencia intrafamiliar que arropa a Puerto Rico.[8]  Conforme establece la Exposición de Motivos de la Ley Núm. 54 de 5 de agosto de 1989,

---

[7] A modo de ejemplo, véase, Artículo 2.02 de la Ley Núm. 168-2019. 25 LPRA sec. 462a.
[8] Tomamos conocimiento judicial de las estadísticas de la Policía de Puerto Rico respecto a los incidentes de violencia doméstica reportados.

según enmendada, conocida como *Ley para la Prevención e Intervención con la Violencia Doméstica,* la violencia doméstica es definida como aquel comportamiento antisocial compuesto por maltrato físico y emocional, que sufre una persona por parte de su cónyuge o ex-cónyuge, o de una persona con quien mantiene o ha mantenido una relación íntima. Asimismo, la violencia doméstica o de género atenta contra la integridad y dignidad de las víctimas, sin importar su sexo, orientación sexual, identidad de género, estado civil o estatus migratorio[9]. Al examinar las estadísticas ofrecidas por el Negociado de la Policía de Puerto Rico, es de notar que, la cantidad de incidentes de violencia de género reportados es alarmante. Puesto que, se han reportado miles a través de los años y no aparenta existir una merma en estos incidentes. Según los datos expuestos por el Negociado de la Policía de Puerto Rico y por la Oficina de la Procuradora de la Mujer, durante el periodo de enero a diciembre de 2022, de forma preliminar, se reportó un total de seis mil ciento cuatro (6,104) incidentes de violencia de género[10]. Por otro lado, durante enero a diciembre de 2021, fueron reportados siete mil novecientos seis (7,906) incidentes de violencia de género, de enero a diciembre de 2020, se reportaron seis mil quinientos cuarenta (6,540) incidentes de violencia doméstica, y durante enero a diciembre de 2019, fueron reportados siete mil veintiún (7,021) incidentes de violencia doméstica[11]. A la fecha en que se suscribe este Voto Disidente, ya suman cuatro los feminicidios registrados en los primeros dos meses del 2023.

Según se desprende de los datos reseñados, en los pasados años, no se ha visto una disminución en el total de incidentes de

---

[9] Art. 1.2 de la Ley Núm. 54-1989, 8 LPRA sec. 601.
[10] Oficina de la Procuradora de las Mujeres https://docs.pr.gov/files/Mujer/Estadisticas/Violencia%20de%20G%C3%A9nero/Incidentes%20de%20Violencia%20de%20G%C3%A9nero%20A%C3%B1o%202022.pdf (Última visita, 24 de febrero de 2023.)
[11] Negociado de la Policía, Estadísticas Sobre Violencia de Género https://policia.pr.gov/estadisticas-de-violencia-domestica/ (Última visita, 24 de febrero de 2023.

violencia doméstica, sino que, se ha visto como estos son cada vez más frecuentes. Ante este escenario, el asunto de violencia doméstica no debe ser tomado de manera liviana, pues es una problemática social que nos afecta de forma directa o indirecta a todos. Tanto los tribunales como el Estado, tenemos el deber ministerial y nos encontramos en posición de enfrentar esta problemática e implementar las medidas necesarias dirigidas a proteger la vida, la seguridad y dignidad de las víctimas de violencia de género, sin importar su sexo, identidad de género, estado civil, estatus migratorio u orientación sexual.

Los jueces no podemos abstraernos de esta realidad que aqueja a nuestra sociedad.[12] A juicio de esta Juez, el Legislador contempló esta problemática y estableció determinadas condiciones y requisitos para obtener la licencia de armas y evitar de este modo, que una persona con antecedentes que denoten una conducta violenta tenga derecho a portar armas. Sobre este particular, conforme dispone el Artículo 2.02 de la Ley Núm. 168-2019, *supra*, uno de los requisitos para que la oficina de Licencia de Armas expida la licencia de armas es *no estar bajo una orden del tribunal, o haber estado en cualquier momento durante los pasados doce meses previos a la fecha de solicitud, que le prohíba acosar, espiar, amenazar o acercarse a un compañero íntimo, algún familiar de este o a persona alguna.*

Como sabemos, a raíz del incidente de violencia que dio origen al caso de marras, contra el peticionario se expidió una *Orden de Protección* al amparo de la Ley 54, *supra,* cuya vigencia fue extendida en varias ocasiones. Por lo tanto, ante este escenario, resulta lógico razonar que, al examinar los criterios para

---

[12] La nueva Ley de Armas, *supra*, en su Artículo 2.14 provee un procedimiento expedito de licencia de armas y autorización para portar armas para víctimas de violencia doméstica y acecho.

la expedición de la licencia de armas, el peticionario quedaría automáticamente descualificado para ostentar la misma.

A esta Juez le resulta inaudita la postura asumida por el Pueblo de Puerto Rico, representado por la Oficina del Procurador General, de allanarse a la solicitud del peticionario, amparado en su análisis y aplicación de la derogada Ley de Armas, Ley 404-2000, a pesar de que el precepto legal citado, según señala, "no dispone expresamente el proceso que debe seguir el foro judicial para devolver el arma de fuego y la licencia de armas ocupada a raíz de un proceso penal que culmina al amparo de la Regla 64(n) de Procedimiento Criminal. **Es decir, cuando no existe una adjudicación en los méritos**." Ciertamente, a juicio de esta Juez, con la postura asumida en este caso, el Pueblo de Puerto Rico se distancia de su deber ministerial de proteger y defender a una víctima de violencia doméstica, a favor de la cual se expidió una *Orden de Protección*, cuya vigencia fue extendida en más de una ocasión.

Por su parte, la Mayoría de este Panel, con su determinación, extrapola el Artículo 2.08 de la precitada Ley de Armas, a fin de devolverle el arma al peticionario, y soslaya el Artículo 2.02 del aludido precepto legal, que, a todas luces, inhabilitan al peticionario para poseer la licencia de armas y portar el arma ocupada. Ello, sin tomar en consideración las consecuencias nefastas que dicho curso de acción podría conllevar para la perjudicada en los casos de origen, así como para las víctimas de violencia doméstica en general. Consecuentemente, evaluadas las circunstancias particulares de este caso, conforme a las disposiciones reglamentarias antes esbozadas, es el criterio de esta Juez que, actuó correctamente el foro de primera instancia al negarse a conceder el remedio solicitado por el peticionario y remitir el asunto al Negociado de la Policía para su consideración.

Por todo lo anterior, disiento del curso de acción que ha tomado la Mayoría en este caso.


**GLORIA L. LEBRÓN NIEVES**
Juez de Apelaciones